## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DEBORAH SCHRECENGOST, *on behalf of herself and all others similarly situated*, | ) ) ) |  |
|  | ) | Case No. 2:22-cv-1118 |
| *Plaintiff*, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| APPLIED TEST SYSTEMS, LLC, MICHAEL A. ASTI, and JOHN DOES 1 THROUGH 100, | ) ) ) | **JURY TRIAL DEMANDED** |
|  | ) |  |
| *Defendants*. | ) |  |
|  | ) |  |

## COLLECTIVE AND CLASS ACTION COMPLAINT
## IN CIVIL ACTION AND JURY DEMAND

Deborah Schrecengost (hereinafter, "Plaintiff"), on behalf of herself and all others similarly situated (hereinafter, the "Class Members"), by and through her undersigned counsel, now files this Collective and Class Action Complaint in Civil Action and Jury Demand (hereinafter, the "Class Action Complaint") averring as follows:

### INTRODUCTION

1.     Plaintiff brings this lawsuit under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*., (hereinafter, the "FLSA") and the Minimum Wage Act of 1968, 43 Pa. Stat. § 333.101, *et seq*., (hereinafter, the "MWA").

2.     Defendants, Applied Test Systems, LLC (hereinafter, "ATS"), Michael A. Asti (hereinafter, "Mr. Asti") and John Does 1-100 (hereinafter, "Doe Defendants") (collectively identified as, "Defendants"), have perpetuated unlawful wage and timekeeping practices upon their

employees within the course of their standard business policies and in doing so have systematically violated the FLSA and the MWA.

    3.     The natural effect and intended result of Defendants' conduct is clear: to reduce labor and payroll costs borne by Defendants without diminishing the work output by Plaintiff and the Class Members.

    4.     Defendants effectuated this aim, what is aptly described as contemporary wage theft, upon the implementation of two systemic timekeeping practices:

        a)     Defendants unilaterally modified Plaintiff's and the Class Members' timesheets to reflect uniform and consistent start and end times regardless of the time Plaintiff and the Class Members spent working before and after their designated shifts. The improper alteration of records of hours worked, and thereby compensation owed, concealed Defendants' wrongdoing from Plaintiff and the Class Members and misrepresented to them the amount of their earnings; and

        b)     Defendants instituted arbitrary time deductions from Plaintiff and the Class Members' timesheets for a "meal break" regardless of Plaintiff's and the Class Members' ability to enjoy the benefits of said meal break. Specifically, Defendants forced Plaintiff and the Class Members to work in a near-constant state of productivity and regularly denied Plaintiff and the Class Members any ability to take a standalone meal break throughout the course of the workday. Despite this denial, Defendants mandatorily deducted time designated for a meal break from Plaintiff's and the Class Members' time sheets. In doing so, Defendants deprived these individuals of minimum, regular, and overtime rates of pay and realized for themselves the ill-gotten gains and profits lawfully owed and entitled to Plaintiff and the Class Members.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) of the FLSA.

6.      This Court has supplemental jurisdiction over the causes of action arising under 43 P.S. § 333.101, *et seq.*, pursuant to 28 U.S.C. § 1367(a) as these claims share the operative facts at issue within the claims arising under 29 U.S.C. § 201, *et seq.*

7.      This Court is empowered to issue a declaratory judgment pursuant to 8 U.S.C. §§ 2201 and 2202.

8.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in the United States District Court for the Western District of Pennsylvania (hereinafter, the "District") because Defendants' business operations are located in the District; Plaintiff was employed by Defendant in Butler County, Pennsylvania which is within the geographic scope of the District; and the events or omissions giving rise to the claims occurred in the District.

9.      The Court has personal jurisdiction over Defendants pursuant to 42 Pa. C.S. § 5301 as ATS was formed under the laws of the Commonwealth of Pennsylvania and Defendants are geographically located within the Commonwealth of Pennsylvania.

## PARTIES

10.      Plaintiff is an adult individual who resides at 212 East Patterson Avenue, Butler, Pennsylvania 16001.

11.      Defendant, ATS, is a limited liability company formed under the laws of Pennsylvania and does business throughout the Commonwealth of Pennsylvania as well as with various interstate entities.  ATS' principal place of business is located at 154 East Brook Lane, Butler, Pennsylvania 16002 (hereinafter, the "East Brook Lane Facility").

12.     Defendant, Mr. Asti, is an officer, director, and owner of ATS and at all times relevant hereto managed ATS' human resources department.  Mr. Asti regularly exercised control of ATS and controlled the terms and conditions of Plaintiff's employment and that of the Class Members, including compensation and pay practices.  Further, Mr. Asti had the ability to hire and fire employees of ATS and to significantly affect the terms and conditions of their employment. At all times relevant hereto, Mr. Asti worked at and was located at the East Brook Lane Facility.

13.     The true names and capacities of the Doe Defendants are unknown to Plaintiff at this time and Plaintiff sues such Doe Defendants under fictitious names.  Plaintiff is informed and believes, and thereon alleges, that each Doe Defendant is in some manner responsible for the occurrences alleged herein, and that all Plaintiff's and the Class Members' injuries and damages, as alleged herein, were proximately caused by the conduct of such Doe Defendants.  Plaintiff will seek leave of the Court to amend this complaint to allege the true names and capacities of such Doe Defendants when ascertained.

## **GENERAL ALLEGATIONS**

14.     On or about April of 2018, Plaintiff was hired by ATS in the role of "Shipping Coordinator".  At the outset of Plaintiff's employment, Plaintiff was compensated at an hourly rate of sixteen dollars per hour.  At all times relevant hereto Plaintiff was classified as a "non-exempt" employee pursuant to the FLSA and the MWA.

15.     Within Plaintiff's role, Plaintiff's duties included, but were not limited to: preparing items and various products for shipment destined to both intra- and interstate locations; ensuring proper packaging and assembly of order contents; evaluating various order requests and determining what delivery services or vendors were necessary to properly fulfill the order; maintaining records of incoming and outgoing shipments and recording packing slips; and entering

data such as addresses, quantities, and weights to complete the paperwork necessary for product shipment.

16.    At all times throughout the workday, and at all times relevant hereto, Defendants forcefully emphasized a high-level of employee productivity and job performance.  This forced Plaintiff to work constantly throughout the day with little to no personal breaks.  Further, Plaintiff regularly observed her coworkers working throughout the entirety of the workday in a near-constant fashion without the ability to take meal or rest breaks.

17.    Plaintiff's regular work schedule set forth a start time of 8:00 a.m. Notwithstanding, Defendants required Plaintiff to report to work in time to commence actual work at 7:45 a.m. in order to continually meet the duties and expectations of her and the deadlines associated with her position.  Additionally, Plaintiff was forced to regularly work over and above forty hours within a seven-day period to ensure the satisfaction of all relevant deadlines and to ensure her workplace duties were completed in a timely fashion.

18.    Plaintiff was not unique in arriving to ATS' facility earlier than her scheduled shift to begin fulfilling her workplace duties, nor in working more than forty hours in a seven-day period.  Plaintiff customarily observed her coworkers arriving before their designated shift times to begin fulfilling their workplace duties.  Further, Plaintiff observed coworkers working more than forty hours per week as these colleagues were often working alongside Plaintiff.

19.    At all times relevant hereto, Defendants maintained an internal timeclock computer system (hereinafter, the "Timeclock") that enabled Defendants to document the hours Plaintiff and the Class Members recorded at the start and stop of their respective workdays.  Defendants used the Timeclock and the corresponding records therein to generate payroll to Defendants' employees.

20.    On or about December of 2019, Plaintiff noticed a discrepancy between the hours she recorded on her Timeclock and the wage statement which accompanied Plaintiff's paycheck for that pay period (hereinafter, the "December Wage Statement").

21.    Generally, Plaintiff observed that the December Wage Statement reflected significantly fewer hours than what Plaintiff had actually worked and did not accurately reflect the hours Plaintiff recorded within the Timeclock for that pay period.

22.    Specifically, the December Wage Statement reflected that Plaintiff started every workday at exactly "8:00 a.m." and that the corresponding workday concluded at precisely "5:00 p.m." For every day throughout the relevant pay period, however, Plaintiff arrived initiated her workday no later than 7:45 a.m., often earlier, and finished her work well after 5:00 p.m.

23.    Given this discrepancy, Plaintiff's compensation for the December Wage Statement pay period was drastically less than the compensable hours Plaintiff had actually worked and was significantly less than what she previously recorded within the Timeclock.

24.    Plaintiff, incensed by the discrepancy, then reviewed previous wage statements and paychecks provided to her by Defendants and identified that Plaintiff's wage statements and paystubs consistently reflected uniform start and stop times of "8:00 a.m." and "5:00 p.m." respectively.

25.    Upon further investigation into the previous wage statements, Plaintiff then identified that her compensable time was mandatorily and arbitrarily reduced by a minimum of thirty (30) minutes and up to forty-five (45) minutes per weekday for a personal meal break (hereinafter, the "Lunch Deduction").

26.    The Lunch Deduction was taken regardless of the time Plaintiff actually spent utilizing a meal break. Indeed, Defendants' implementation of this practice is self-evident as this

deduction was specifically enumerated as a line item within Defendants' timeclock data system as a "lunch deduction".

27.     At all times relevant hereto, and as delineated above, Defendants forced Plaintiff to work through any time allocated to her for a meal break given the amount of Plaintiff's workload and the corresponding deadlines.  Therefore, Defendants' practice of the Lunch Deduction served to deprive Plaintiff of actual compensable time and hours worked.

28.     Plaintiff then proceeded to investigate Defendants' timekeeping practices to ascertain whether these practices were unique to her or if these were systemic practices across Defendants' entire operations.  Correspondingly, Plaintiff inquired with a number of her coworkers as to whether they had been subjected to similar unlawful procedures.

29.     Plaintiff was unanimously informed by all coworkers questioned that "regardless of the time worked, they were only compensated for a total of eight (8) hours daily."  Plaintiff's coworkers then confirmed to her that an overtime rate of pay was only disbursed where an individual worked an exorbitant number of hours in excess of eighty (80) hours in a two-week period.  This policy disregarded the number of hours worked in the relevant seven-day period.

30.     Furthermore, all of Plaintiff's similarly situated coworkers confirmed they too were forced to work constantly throughout the day with little to no ability to take a meal break.  Despite this, Plaintiff's coworkers confirmed they were also deducted the mandatory and arbitrary Lunch Deduction.

31.     Plaintiff eventually inquired about Defendants' timekeeping practices with accounting department personnel.

32.     Plaintiff was informed by certain individuals within the department that they had been explicitly instructed by Mr. Asti himself to change all of ATS' employees' submitted hours

worked, via the Timeclock, to reflect a uniform eight (8) hours of hours worked daily, regardless of hours worked.

33.    Plaintiff subsequently asked the accounting department personnel as to whether there was documentation as to the hours actually recorded within the Timeclock.  Plaintiff was then informed that the Timeclock's configuration and system limitations overwrote the previously submitted time and that any record of the originally submitted time was deleted upon this administrative alteration.

34.    These wage practices described hereinabove continued throughout the entirety of Plaintiff's career with Defendants until her employment separation in August of 2020.

35.    Defendants therefore engaged in routine and systematic alterations and modifications of Plaintiff's and the Class Members' time statements with reckless disregard to their duties under state and federal recordkeeping requirements and specifically concerning those mandating strict accuracy of time records.

36.    Upon information and belief, Defendants operated under the assumption that any contrasting timekeeping records demonstrating their unlawful behavior would be correspondingly destroyed.

37.    The natural consequence of Defendants' unlawful pay practices delineated above denied Plaintiff and the Class Members of a minimum rate of pay, an overtime rate of pay, wages and overtime compensation, and other benefits Plaintiff and the Class Members were lawfully entitled to.

38.    Defendants knew, and were aware at all times, of the above-mentioned violations. The corresponding and beneficial effect for Defendants of the conduct alleged above was to reduce Defendants' labor and payroll costs, while still receiving the benefit of such work.

39.     Plaintiff and the Class Members were subject to Defendants' uniform policies and practices and were the victims of Defendants' schemes to deprive them of wages and overtime compensation.  As a result of Defendants' improper and willful failure to pay Plaintiff and the Class Members in accordance with the requirements of Pennsylvania and federal wage and hour laws, Plaintiff and the Class Members have suffered lost wages and other damages.

### FLSA COLLECTIVE ALLEGATIONS AND CLASS ALLEGATIONS

40.     Plaintiff incorporates the allegations contained in paragraphs 1 through 39, as if fully set forth at length herein.

41.     This Class Action is filed pursuant to 29 U.S.C. § 216(b) and Rule 23 of the Federal Rules of Civil Procedure on behalf of the "Timeclock Class" (as defined herein) and the "Lunch Deduction Class" (as defined herein) (The Timeclock Class and the Lunch Deduction Class are hereinafter collectively referred to as the "Classes") and are defined as follows:

### The Timeclock Class

> The Timeclock Class shall consist of all individuals who are currently employed by ATS or were employed by ATS at any time during the relevant statute of limitations period and submitted to ATS' agents and payroll personnel time records reflecting specific hours/time worked for ATS.

### The Lunch Deduction Class

> The Lunch Deduction Class shall consist of all individuals who are currently employed by ATS or were employed by ATS at any time during the relevant statute of limitations period and had compensable hours worked for ATS reduced due to a meal break.

42.     Plaintiff is a member of each of the Classes as she regularly submitted hours reflecting her time worked for ATS.  Further, Defendants regularly reduced Plaintiff's hours worked by a meal period of one-half hour up to three quarters of one hour on a daily basis.

43.     Plaintiff reserves the right to expand, limit, modify, or amend the class definitions, including the addition of one or more subclasses, in connection with a motion for class certification, or at any other time, based upon, among other things, changing circumstances and new facts obtained during discovery.

**A.  F.R.C.P. Rule 23(a)(1) – Numerosity**

44.     The Classes are so numerous that it is impracticable to bring all persons and entities that comprise them before the Court.  The exact number of the members of each of the Classes are unknown, but it is believed the Classes include hundreds of people.  In many instances, Class Members are either unaware that claims exist or have sustained individual damages too small to justify the costs of bringing suit separately.  When aggregated, however, individual damages are large enough to justify this Class Action.

**B.  F.R.C.P. Rule 23(a)(2) – Commonality**

45.     The questions of law and fact common to the claims of the Class Members overwhelmingly predominate over any question of law or fact affecting only individual members of the Classes.  Questions of law and fact common to the Classes include, but are not necessarily limited to, the following:

**The Timeclock Class**

A)     Whether Defendants violated 29 U.S.C. § 206 of the FLSA and 43 Pa. Stat. § 333.104 of the MWA by failing to compensate employees at the legally required minimum hourly wage for all hours dedicated to Defendants workplace operations?

B)     Whether Defendants violated 29 U.S.C. § 207 of the FLSA and 43 Pa. Stat. § 333.104 of the MWA by failing to compensate employees at the legally required overtime rate of pay for hours worked in excess of forty in a seven-day period?

C)       Whether Defendants violated 29 U.S.C. § 211 of the FLSA and 43 Pa. Stat. § 333.108 of the MWA by unilaterally and arbitrarily altering employee time records to reflect uniform start and stop times irrespective of the hours employees actually recorded and worked?

<u>**The Lunch Deduction Class**</u>

A)       Whether Defendants violated 29 U.S.C. § 206 of the FLSA and 43 Pa. Stat. § 333.104 of the MWA by reducing wages owed to employees for actual work performed by the Lunch Deductions?

B)       Whether Defendants violated 29 U.S.C. § 206 of the FLSA and 43 Pa. Stat. § 333.104 of the MWA by failing to compensate employees at the legally required minimum rate of pay for all hours worked?

C)       Whether Defendants violated 29 U.S.C. § 207 of the FLSA and 43 Pa. Stat. § 333.104 of the MWA by failing to compensate employees at the legally required overtime rate of pay when the Lunch Deductions are added back into the hours employees worked over a seven-day period?

**C.  <u>F.R.C.P. Rule 23(a)(3) – Typicality</u>**

46.    Plaintiff's claims are typical of the claims of the Class Members that Plaintiff seeks to represent.  At all times material to the allegations of this Class Action Complaint, Plaintiff and the Class Members were subject to the same policies, practices, and procedures and seek the same kind of relief.

47.    Plaintiff and the Class Members that Plaintiff seeks to represent have sustained similar types of damages, and the Class Members have claims that arise from an identical factual background and identical legal theories.

**D.  F.R.C.P. Rule 23(a)(4) – Adequacy of Representation**

48.      Plaintiff assures the adequate representation of all Class Members that the Plaintiff seeks to represent.  As delineated above, Plaintiff's claims are typical of the claims of the Class Members.  Plaintiff possesses no conflicts with Class Members that Plaintiff seeks to represent in the maintenance of this action.

49.      Plaintiff's interests are not antagonistic to the interests of the Class Members or the Classes she seeks to represent because upon proving Plaintiff's claims, it will necessarily prove Defendants' liability as to the Class Member's claims.

50.      Plaintiff is also cognizant of and determined to faithfully discharge her fiduciary duty to the Class Members in the Classes that Plaintiff seeks to represent.

51.      Plaintiff will vigorously pursue the Class Member's claims and Plaintiff is aware that this Class Action cannot be settled on behalf of the Class Members without prior Court approval.

52.      Plaintiff has and/or can acquire any and all financial resources necessary to vigorously litigate this Class Action Complaint.

53.      The undersigned counsel is experienced in litigating class action civil lawsuits and has handled similar such actions in the federal courts for and on behalf of other litigants.

**E.  A Class Action Provides a Fair and Efficient Mechanism for Litigation.**

54.      As delineated above, the common questions of law and fact predominate over question(s) affecting individual Class Members.  Accordingly, a class action provides a fair and efficient method of adjudicating this Class Action Complaint.

55.      The substantive claims of Plaintiff and the Class Members require evidentiary proof of the same kind.  Further, adjudicating the legal merits of Plaintiff's and the Class Members'

claims will require the application of the same law since Defendants have treated all Class Members in the Classes in a similar and/or identical manner.

56.     The prosecution of separate actions by the Class Members readily creates the risk of inconsistent or varying adjudications with respect to individual Class Members. This would, as a practical matter, impair or impede the ability of the Class Members to protect their respective interests.

57.     Furthermore, a class action represents a superior method for the fair and efficient adjudication of this Class Action Complaint. Individual litigation, and the corresponding expense and burden, make it impossible for individual Class Members to seek redress for the wrongs complained of herein.

58.     This forum is appropriate for litigation of the instant Class Action Complaint because Plaintiff resides in the District; Defendants conduct business in the District; and the course of conduct begetting liability and the factual basis of the Class Action Complaint occurred in the District.

59.     There are no known unusual legal or factual issues that would impede or impair the progression of the Class Action Complaint that are not routinely handled in the course of traditional class action litigation.

60.     Plaintiff seeks to represent Class Members that may be unaware that their rights have been violated, or if aware, would be unable to litigate their claims on an individual basis because of their relatively small damages. As such, a class action is the only practical proceeding available.

## COUNT I
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT
### 29 U.S.C. § 201, *et seq.*

61.    Plaintiff incorporates the allegations contained in paragraphs 1 through 60, as if fully set forth at length herein.

62.    The FLSA mandates two minimum rates of pay for time employees spend dedicated to workplace operations for covered entities.  The first, a minimum rate of pay for any hours worked such that no employee is compensated less than seven dollars and twenty-five cents per hour.  The second, a heightened rate of one hundred fifty percent multiplied by the employee's base rate of pay for any hours worked in excess of forty hours worked within a seven-day period. 29 U.S.C. §§ 206 and 207.

63.    Furthermore, the FLSA mandates covered entities to maintain and preserve accurate records concerning employee wages, hours, and terms and conditions of employment.  29 U.S.C. § 211.

64.    29 U.S.C. § 206 governs the minimum rate of pay and provides, in relevant part:

(a) Employees engaged in commerce…  Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:
(1) except as otherwise provided in this section, not less than…
(C) $7.25 an hour, beginning 25 months after that 60th day.

29 U.S.C. § 206 of the FLSA.

65.    29 U.S.C. § 207 governs the heightened rate of overtime pay and provides:

(a) Employees engaged in interstate commerce…
(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours

> unless such employees receives compensation for his employment
> in excess of the hours above specified at a rate not less than one and
> one-half times the regular rate at which he is employed.

29 U.S.C. § 207 of the FLSA.

66.     The minimum pay mandates are incumbent upon "employers" who through the

course of their business practices are "engaged in commerce." 29 U.S.C. §§ 203(d) and 29 U.S.C.

§ 203(s)(1).

67.     29 U.S.C. § 203(d) delineates the definition of an employer as follows:

> "Employer" includes any person acting directly or indirectly in the
> interest of an employer in relation to an employee and includes a
> public agency, but does not include any labor organization (other
> than when acting as an employer) or anyone acting in the capacity
> of officer or agent of such labor organization.

29 U.S.C. § 203(d) of the FLSA.

68.     The FLSA's expansive definition of "any person" within the scope of "employer"

is broadly construed and the Third Circuit recognizes that liability for violations of the FLSA attach

not just to the corporate entity itself, but also to the owners, officers, and supervisory personnel of

the organization. *See Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014).

69.     The term "commerce" is specifically defined to include activities such as "trade,

commerce, transportation, transmission, or communication among the several States or between

any State and any place outside thereof." 29 U.S.C. § 203(b).

70.     Further, 29 U.S.C. § 203(s)(1) identifies when an organization engages in

"commerce" sufficient to trigger the FLSA as:

> "Enterprise engagement in commerce or in the production of goods
> for commerce" means an enterprise that (A)(i) has employees
> engaged in commerce or in the production of goods for commerce,
> or that has employees handling, selling, or otherwise working on
> goods or materials that have been moved in or produced for
> commerce by any person; and (ii) is an enterprise whose annual

gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1) of the FLSA.

71.     In further elaboration of "commerce," the Third Circuit recognized in *Marshall v. Brunner*, 668 F.2d 748, 751 (3d. Cir. 1982) that an employer's use of out-of-state manufactured equipment which the employer transported in-state for its operations was sufficient to find the employer was an "enterprise engaged in commerce" pursuant to the FLSA.

72.     An "employee" is defined within 29 U.S.C. § 203(e)(1) which states in relevant part:

> Except as provided in paragraphs (2), (3), and (4), the term "employee" means any individual employed by an employer.
> (2) In the case of an individual employed by a public agency.
> (3) For purposes of subsection (u) of this section, such term does not include any individual employed by an employer engaged in agriculture if such individual is the parent, spouse, child, or other member of the employer's immediate family.
> (4)(A) The term "employee" does not include any individual who volunteers to perform services for a public agency which is a State, a political subdivision of a State, or an interstate governmental agency.
> (5) The term "employee" does not include individuals who volunteer their services solely for humanitarian purposes to private non-profit food banks and who receive from the food banks groceries.

29 U.S.C. § 203(e)(1) of the FLSA.

73.     The definition of "employee" is also recognized as "exceedingly broad" as to properly effectuate of the remedial purposes of the FLSA.  *Safarian v. Am. DG Energy Inc.*, 622 F. App'x 149, 151 (3d Cir. 2015) citing *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991).

74.     29 U.S.C. § 203(g) is to be read in conjunction with 29 U.S.C. § 203(e)(1) and defines "employ" to mean "to suffer or permit to work." 29 U.S.C. § 203(g).

75.    To further aid in evaluating whether an individual constitutes an "employee" within the FLSA, the Third Circuit examines the "economic reality" surrounding the workplace relationship and utilizes six factors in reaching a determination as to the individual's employment status. *Martin*, 949 F.2d at 1293.

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Martin,* 949 F.2d at 1293 quoting *Donovan v. DialAmerica Mktg., Inc*., 757 F.2d 1376, 1382 (3d Cir. 1985).

76.    The determination as to an individual's employment status is examined holistically in consideration of not only the six factors, but also the "circumstances of the whole activity." *Id.* citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947).

**A.  Defendants ATS and Michael Asti are "employers" pursuant to 29 U.S.C. § 203 of the FLSA.**

77.    As delineated above, an "employer" within the purview of the FLSA includes "any person acting in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).

78.    ATS extended a position-for-hire to Plaintiff with specified duties, start-times, pay-rates, and required equipment.  ATS exercised authority and control over Plaintiff and instructed the Plaintiff to perform certain tasks for the financial benefit of ATS.  At all times relevant hereto, ATS exercised a position of power and authority over Plaintiff begetting that of an "employer" role in the relationship.

79.    ATS extended to the Class Members similar opportunities of employment and exercised a similar position of "employer" over the Class Members.

80.     ATS controlled the terms and conditions of the Class Members' workplace duties, dictated the compensation structure and scheme, and mandated the timekeeping practices the Class Members were subjected to as a condition of employment.

81.     As such, ATS is an "employer" pursuant to 29 U.S.C. § 203(d) in regard to both Plaintiff and the Class Members.

82.     Mr. Asti specifically exerted influence and control over the terms and conditions of Plaintiff's and the Class Member's employment including the compensation structure, hours available to work, and the timekeeping practices Plaintiff and the Class Members were forced to comply with.  Mr. Asti further possessed the ability to hire and fire employees of ATS and to significantly affect and alter the terms and conditions of their employment.  Therefore, Mr. Asti exercised a position of power and authority over Plaintiff and the Class Members begetting that of an "employer" role in the relationship sufficient to satisfy 29 U.S.C. § 203(d).

83.     Given Mr. Asti's role in the manipulation of Plaintiff and the Class Members' timesheet and his specific directive to effectuate a systemic unlawful workplace wage practice delineated above, Mr. Asti is individually liable for the corresponding violations of the FLSA.

84.     The corresponding Doe Defendants are individuals within the ATS organizational hierarchy that represent the officers, executives, and supervisors who participated and perpetuated the unlawful wage practices identified herein.  Upon information and belief, the Doe Defendants, once identified, will constitute "employers" within the scope of 29 U.S.C. § 203(d) and, given the liberal definition of "employers," will be subject to liability for their role in the unlawful wage practices utilized within ATS' operations as outlined herein.

**B. Defendant ATS is an "enterprise engaged in commerce" pursuant to 29 U.S.C. § 206 of the FLSA.**

85.    The mandates of the FLSA apply to enterprises that satisfy two organizational criteria: the engagement with "commerce" and an annual gross volume of sales not less than $500,000.  29 U.S.C. § 203(s)(1).

86.    ATS regularly manufactured products and subsequently shipped these products to entities outside the Commonwealth of Pennsylvania and the United States of America.  The creation and shipment of goods destined for out-of-state entities was a mainstay of ATS' operations and regularly occurred within the ordinary course of ATS' business operations.

87.    ATS purchased products, materials, equipment, and supplies necessary and integral for its business operations to and from out-of-state vendors for the express purpose of utilizing said materials, equipment, and supplies for its operations within Pennsylvania.

88.    Additionally, ATS transmitted and received payments and credits from out-of-state vendors by and through the use of the internet, digital payment processing services which traverse state lines, and the mail system.

89.    Therefore, ATS regularly engaged "commerce" to satisfy the first prong of 29 U.S.C. § 203(s)(1)(A)(i).

90.    Upon information and belief, ATS had an annual dollar volume of sales in excess of $500,000 given the size, scope, industry, frequency of work, and caliber of projects in which ATS completed.

91.    Therefore, ATS satisfies both prongs necessary to qualify as an "enterprise engaged in commerce" within the purview of 29 U.S.C. § 206(s)(1)(A)(i).

92.    Given ATS' status as an "employer," ATS was mandated to comply with the minimum wage, overtime rate of pay, and record keeping requirements of the FLSA pursuant to 29 U.S.C. §§ 206, 207, and 211.

**C.  Plaintiff and the Class Members are "employees" within the scope of 29 U.S.C. § 203 of the FLSA.**

93.    The FLSA defines "employee" to include any individual "employed by an employer" and excludes only certain circumstances inapplicable to the instant facts.  29 U.S.C. § 203(e)(1).

94.    At all times relevant hereto, Plaintiff agreed to contribute her time and energy to complete meaningful workplace duties for the financial benefit of ATS.  Plaintiff agreed to complete these duties in exchange for financial remuneration and Plaintiff's completion of these duties was never met with objection from ATS.  Given ATS' lack of objection to Plaintiff's completion of duties, ATS "permitted" Plaintiff to work within the definition of "employ" defined within 29 U.S.C. § 203(g).

95.    Additionally, aided by the six factors enumerated within *Donovan*, delineated above, it becomes even more evident that Plaintiff was an "employee" within the purview of 29 U.S.C. § 203(e)(1).

96.    Defendants exerted significant control over the manner in which Plaintiff performed her workplace duties.  Defendants delineated the methodologies involved in the completion of Plaintiff's duties, the rate of productivity and the speed in which Plaintiff was to complete her tasks and designated the specific space in which Plaintiff was to perform her tasks.

97.    Plaintiff possessed no meaningful opportunity for profit nor any financial risk of loss depending on her skill given she was compensated at a determined hourly rate.  Any

compensation disbursed to Plaintiff was derived from hours recorded within the Timeclock and Plaintiff was dependent on this hourly-compensation scheme for her pay.

98.    Plaintiff was provided the equipment and materials necessary for the completion of all workplace tasks.  Furthermore, the completion of her workplace tasks did not require any talents unique to Plaintiff or that were uncommon outside a traditional office or manufacturing environment.

99.    Plaintiff worked for Defendants since 2018 in a capacity that regularly involved Plaintiff dedicating more than forty hours per week to ATS' operations.  Plaintiff's employment was not limited by a specific duration or term of employment.

100.    The workplace duties to which Plaintiff completed were an integral component of ATS' operations given the delivery of manufactured goods to ATS' customers was necessary for the continued functioning of ATS' operations.

101.    As the factors delineated above readily illustrate, the reality of the circumstances surrounding Plaintiff's and ATS' interaction plainly indicate that Plaintiff was an "employee" for Defendants within the scope of 29 U.S.C. § 203.

102.    At all times relevant hereto, the Class Members are similarly situated "employees" to Plaintiff sufficient to trigger the protections of 29 U.S.C. § 203.

**D.  <u>The Unlawful Alteration of the Timeclock and the Erasure of Plaintiff's and the Class Members' Hours Worked Deprived Plaintiff and the Class Members of Minimum and Overtime Rates of Pay.</u>**

103.    At all times hereto, Defendants were mandated to provide to Plaintiff and the Class Members a minimum rate of pay for all hours worked of no less than seven dollars and twenty-five cents per hour worked pursuant to 29 U.S.C. § 206.

104.    Defendants were further mandated to pay Plaintiff and the Class Members one hundred fifty percent of their corresponding base rate of pay for any time worked beyond forty hours in a seven-day period.  29 U.S.C. § 207.

105.    Defendants directed an organization-wide policy where ATS' accounting department personnel were instructed to unilaterally modify the time Plaintiff and the Class Members recorded within the Timeclock.

106.    Defendants specifically instructed accounting department personnel to erase the accurately recorded hours Plaintiff and the Class Members submitted.

107.    Defendants further instructed the accounting department personnel to alter, without Plaintiff's or the Class Members' consent, the Timeclock to reflect uniform start and stop times of "8:00 a.m." and "5:00 p.m." for the hours Plaintiff and the Class Members worked within the relevant pay period.  At all times relevant hereto, Plaintiff and the Class Members routinely worked hours in excess of these stated hours and in excess of forty hours per seven-day period.

108.    As Defendants' payroll was generated based on the data within the Timeclock, Defendants' modification of the Timeclock lessened the hours that the Plaintiff and the Class Members recorded and thus reduced the hours Plaintiff and the Class Members would be compensated for during that pay period. The Timeclock modification ensured that Plaintiff and the Class Members engaged in hours of work for Defendants but were paid nothing in exchange for the hours worked.

109.    This rate of pay is well below the threshold seven dollars and twenty-five cents per hour mandated by the FLSA.  Further, the Timeclock modification ensured Plaintiff and the Class Member's total compensation, measured on a weekly basis, fell below that of the statutory minimum rate in violation of 29 U.S.C. § 206.

110.    Additionally, Plaintiff and the Class Members regularly worked in excess of forty hours per week.  Plaintiff and the Class Members therefore engaged in hours of work that were to be compensated at the overtime rate of pay of one hundred fifty percent of their base rate of pay.

111.    As the hourly threshold following the Timeclock modification was set to a rote forty hours of work per week, this reduced Plaintiff's and the Class Members' hours recorded below the hourly threshold necessary to trigger an overtime rate of pay.

112.    As such, Plaintiff and the Class Members worked hours in excess of forty in a seven-day period but were wholly denied any compensation for these overtime-eligible hours. Therefore, Plaintiff and the Class Members were compensated at a rate less than one hundred fifty percent of their base rate of pay in violation of 29 U.S.C. § 207.

**E.    The Unlawful Deductions to Plaintiff's and the Class Members' Time Pursuant to the Lunch Deduction.**

113.    Defendants automatically deducted one half hour up to three quarters of an hour from the time Plaintiff and the Class Members submitted as compensable hours.

114.    The Lunch Deduction was effectuated in an arbitrary and mandatory fashion and in complete disregard to the amount of time Plaintiff and the Class Members actually spent utilizing meal breaks.

115.    Plaintiff and the Class Members seldom appreciated the benefit of a meal break because of the high rate of productivity forcefully emphasized by Defendants.  As such, the Lunch Deduction removed time from Plaintiff's and the Class Members' Timeclock which represented time Plaintiff and the Class Members actually spent completing their workplace duties rather than time spent pursuant to a purported meal break.

116.    This reduction then deprived Plaintiff and the Class Members of a minimum rate of pay as, once again, Plaintiff and the Class Members engaged in hours worked for Defendants

but received a rate less than the minimum rate of pay for said hours worked in violation of 29 U.S.C. § 206.

117.    The Lunch Deduction further reduced Plaintiff and the Class Members below the hourly threshold necessary to entitle them to the overtime rate mandated by 29 U.S.C. § 207 and served to deprive Plaintiff and the Class Members of the heightened rate of overtime pay.

118.    Furthermore, Defendants' practice of modifying the Timeclock, both by and through their deliberate practices and the Lunch Deduction, not only destroyed the accurate records relating to Plaintiff and the Class Members, but also created false, inaccurate, and deceptive records concerning the wages, hours worked, and terms and conditions of Plaintiff's and the Class Members' employment.

119.    Therefore, Defendants flagrantly violated and disregarded the duties incumbent upon them as employers to maintain and preserve the accuracy of these records in violation of 29 U.S.C. § 211.

**F.  Defendants Willfully Violated the FLSA and an Award of Liquidated Damages is an Appropriate Remedy.**

120.    Defendants' actions described hereinabove were the direct and proximate causes of Plaintiff's and the Class Members' damages, violations of statutory rights, and have deprived Plaintiff and the Class Members of the minimum, regular, and overtime rates of pay.  Defendants are further liable to Plaintiff and the Class Members for actual damages, liquidated damages, and equitable relief pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs, and expenses.  Plaintiff seeks damages for herself and all others similarly situated for these violations of the FLSA.

121.    Plaintiff has sufficiently established a denial of both the minimum rate of pay and the denial of overtime wages pursuant to 29 U.S.C. §§ 206 and 207.  Therefore, Plaintiff is entitled

to an additional equal amount of lost wages as liquidated damages as imbued within 29 U.S.C. 216(b).

122.    The award of liquidated damages pursuant to the FLSA is not penal in nature, but rather is viewed as a compensatory remedy. *Martin v. Selker Bros.*, 949 F.2d 1286, 1299 (3d Cir. 1991) citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583-84 (1942).

123.    Indeed, the Supreme Court of the United States has opined on the compensatory nature of this remedy as compensation for the "workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Schonewolf v. Waste Mgmt., Inc.*, No. 17-3745, 2018 BL 92619, at *5 (E.D. Pa. Mar. 19, 2018) citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707-08 (1945).

124.    Furthermore, the award of liquidated damages is mandatory unless an employer can make a "showing of good faith and reasonable grounds for its conduct." *Martin*, 949 F.2d at 1299.

125.    Defendants are unable to meet the burden of establishing "good faith and reasonable grounds" for its violation of Plaintiff's and the Class Members' rights. This is demonstrated by Defendants' actions, statements, and practices, delineated above, which illustrates Defendants' willful animus in flagrantly disregarding its responsibilities and obligations as an employer.

126.    Plaintiff and the Class Members are also entitled to injunctive relief to prevent Defendants from continuing to violate the FLSA and other appropriate class-wide injunctive relief.

## COUNT II
### VIOLATION OF THE MINIMUM WAGE ACT OF 1968
### 43 Pa. Stat. §333.101, *et seq*.

127.    Plaintiff incorporates the allegations contained in paragraphs 1 through 126, as if fully set forth at length herein.

128.    The MWA, much like its federal law counterpart in the FLSA, mandates a minimum rate of pay for all hours worked and a heightened rate of pay for any hour worked in excess of forty hours per work week.  43 P.S. § 333.104, *et seq*.

129.    Further, covered employers are required to keep true and accurate records all hours worked and wages earned by its employees pursuant to 43 P.S. § 333.108.

130.    43 P.S. § 333.104 provides, in relevant part:

> (a) Every employer shall pay to each of his or her employes wages for all hours worked at a rate of not less than:
> …
> (8) Seven dollars fifteen cents ($7.15) an hour beginning July 1, 2007.

43 P.S. § 333.104(a) of the MWA.

131.    Further, the minimum rate established under the MWA mirrors the FLSA's minimum rate of pay where the FLSA offers greater compensation to employees.  43 P.S. § 333.104(a.1).  Specifically, the MWA provides:

> (a.1) If the minimum wage set forth in the Fair Labor Standards Act of 1938 ( 52 Stat. 1060, 29 U.S.C. § 201 *et seq*.) is increased above the minimum wage required under this section, the minimum wage required under this section shall be increased by the same amounts and effective the same date as the increases under the Fair Labor Standards Act, and the provisions of subsection (a) are suspended to the extent they differ from those set forth under the Fair Labor Standards Act.

43 P.S. § 333.104(a.1) of the MWA.

132.    The MWA delineates a minimum rate of pay of seven dollars fifteen cents ($7.15) per hour beginning July 1, 2007.  43 P.S. § 333.104(a)(8).  The FLSA delineates a minimum rate of pay of seven dollars twenty-five cents per hour and therefore controls the current minimum rate of pay within the Commonwealth of Pennsylvania.  29 U.S.C. § 206(a)(1)(C) and 43 P.S. § 333.104(a.1).

133.    43 P.S. § 333.104(c) of the MWA controls the premium compensation rate for overtime hours and states, in relevant part:

> (c) Employes shall be paid for overtime not less than one and one-half times the employe's regular rate as prescribed in regulations promulgated by the secretary… And provided further, that the secretary shall promulgate regulations with respect to overtime subject to the limitations that no pay for overtime in addition to the regular rate shall be required except for hours in excess of forty hours in a workweek.

43 P.S. § 333.104(c) of the MWA.

134.    The MWA mandates these minimum rates of pay upon "employer[s]" which is defined within 43 P.S. § 333.103(g):

> (g) 'Employer" includes any individual, partnership, association, corporation, business trust, or any person or group of persons acting, directly or indirectly, in the interest of an employer in relation to any employe.

43 P.S. § 333.103(g) of the MWA.

135.    The definition of "employer" is expansively construed within the MWA and corporate officers are not shielded from liability for tortious conduct. *Schneider v. IT Factor Prods.*, 2013 BL 341183, at *4 (E.D. Pa. Dec. 10, 2013) citing *Scholly v. JMK Plastering, Inc.*, 2008 BL 141013, at *4 (E.D. Pa. June 25, 2008).

136.    The MWA defines an "employee" within its statutory purview to include "any individual employed by an employer."  43 P.S. § 333.103(h).

137.    In keeping with its FLSA counterpart, the definition of "employ" is broadly defined to "suffer or permit to work." 43 P.S. § 333.103(f).

138.    In determining an individual's status as an "employee" within the MWA, the Commonwealth Court has held the "economic reality test" utilized within the framework of the

FLSA is an appropriate standard to employ for purposes of reaching the same determination within the MWA. *Commonwealth v. Stuber*, 822 A.2d 870, 873 (Pa. Commw. Ct. 2003)

**A.** **Defendants ATS and Michael Asti are "employers" pursuant to 43 P.S. § 333.104(g) of the MWA.**

139.    The MWA broadly defines an "employer" to include any corporation or person acting "in the interest of an employer in relation to any employee."  43 P.S. § 333.104(g).

140.    As delineated more thoroughly above, ATS extended a position to Plaintiff: dictated the manner, methodology, and deadlines Plaintiff was to adhere to at all times in performance of said duties; and compensated Plaintiff in recompense for the completion of said duties.  As such, ATS is an "employer" within 43 P.S. § 333.104(g).

141.    Furthermore, at all times relevant hereto, the Class Members were similarly situated in this regard as fellow "employees" within the purview of 43 P.S. § 333.104(g).

142.    Mr. Asti exerted influence and control over the wages, terms, and conditions of Plaintiff and the Class Members  and exercised a position of authority over Plaintiff and the Class Members sufficient to qualify Mr. Asti as an "employer" in satisfaction of 43 P.S. § 333.104(g).

143.    The corresponding Doe Defendants are the officers, executives, and supervisors within the ATS organizational hierarchy who perpetuated the unlawful wage practices identified hereinabove.   Upon information and belief, the Doe Defendants, once identified, will also constitute "employers" within the scope of 43 P.S. § 333.104(g) and, given the liberal definition of "employers," will be subject to liability for their role in the unlawful wage practices utilized within ATS' operations.

**B.  Plaintiff and the Class Members are "employees" pursuant to 43 P.S. § 333.103(h) of the MWA.**

144.    The MWA defines "any individual employed by an employer" to constitute an "employee" sufficient to qualify for statutory protections of the MWA.  43 P.S. § 333.103(h).

145.    As the *Donovan* factors reveal, as more specifically detailed in Count I delineated above, the circumstances begetting Plaintiff and Defendants' relationship readily demonstrate that Plaintiff was an "employee" of Defendants within the statutory purview of 43 P.S. § 333.103(h).

146.    Furthermore, the Class Members are similarly situated individuals to Plaintiff who were employees for Defendants at all times hereto.

**C.  The Unlawful Alteration of the Timeclock Deprived Plaintiff and the Class Members of Minimum Rates of Hourly Pay and Overtime Pay.**

147.    At all times hereto, Defendants were mandated to provide to Plaintiff and the Class Members a minimum rate of pay for all hours worked of no less than seven dollars and twenty-five cents per hour pursuant to 43 P.S. § 333.104(a.1) and 29 U.S.C. § 206.

148.    Further, Defendants were lawfully required to pay Plaintiff and the Class Members a premium rate of "one- and one-half times" their regular rate of pay for all hours worked over forty per work week.  43 P.S. § 333.104(c).

149.    At all times relevant hereto, Plaintiff and the Class Members routinely initiated their workdays before 8:00 a.m. and routinely concluded the workday after 5:00 p.m.  Further, at all times relevant hereto, Plaintiff and the Class Members maintained accurate reports of their hours worked for Defendants in the Timeclock.

150.    As delineated more thoroughly above, Defendants systematically erased Plaintiff and the Class Members' start and stop times and altered the Timeclock data to reflect uniform start and stop times of "8:00 a.m." and "5:00 p.m.", respectively.  In doing so, Defendants created

artificial wage records, which Plaintiff and the Class Members would later be compensated from, that reflected less compensable hours than what Plaintiff and the Class Members actually worked.

151.     This deprived Plaintiff and the Class Members of both a minimum rate of pay pursuant to 43 P.S. § 333.104(a)(8) and a premium overtime rate pursuant to 43 P.S. § 333.104(c).

**D. <u>The Lunch Deduction Constituted an Unlawful Deduction of Hours Worked</u>**

152.     As delineated above, Defendants automatically deducted one half hour up to three quarters of an hour from the time Plaintiff and the Class Members submitted as compensable hours within the Timeclock.

153.     The Lunch Deduction was mandatory in nature and was effectuated with complete disregard to the actual amount of time Plaintiff and the Class Members utilized for a meal break.

154.     Given Defendants' aggressive emphasis on productivity, Plaintiff and the Class Members seldom utilized a meal break.  As such, the Lunch Deduction regularly removed compensable hours from Plaintiff and the Class Members and not time that actually attributable to a meal break.

155.     The Lunch Deduction therefore deprived Plaintiff and the Class Members of a minimum rate of pay as Plaintiff and the Class Members engaged in hours worked for Defendants but received a rate less than the minimum rate of pay for said hours worked in violation of 43 P.S. § 333.104(a)(8).

156.     The Lunch Deduction further reduced Plaintiff and the Class Members below the hourly threshold needed to trigger the heightened overtime rate for hours worked over forty in a seven-day period.  Therefore, Defendants deprived Plaintiff and the Class Members of overtime pay in violation of 43 P.S. § 333.104(c).

157.    Furthermore, Defendants practices described hereinabove demonstrate Defendants' flagrant disregard of its duties to maintain accurate records of the hours worked of its employees in violation of its recordkeeping duties enshrined within 43 P.S. § 333.108.

158.    Defendants' actions described hereinabove were the direct and proximate causes of Plaintiff's and the Class Members' damages, violations of statutory rights, and have deprived Plaintiff and the Class Members of the minimum, regular, and overtime rates of pay.  Defendants are further liable to Plaintiff and the Class Members for actual damages and liquidated damages, together with costs and reasonable attorney's fees pursuant to 43 P.S. § 333.113.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Deborah Schrecengost, individually and on behalf of all other persons similarly situated, respectfully requests this Honorable Court to enter judgment in their favor, and against Defendants and prays for relief as follows:

1.    Order Defendants to furnish counsel a list of all names, telephone numbers, addresses, and e-mail addresses of all employees who have worked for the Defendant within the last three years;

2.    Determine that this action may proceed as a class action under F.R.C.P. Rule 23, *et seq*.;

3.    Designate this action as an FLSA collective action on behalf of Plaintiffs and the Class Members, and permit prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the Classes, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents to Join pursuant to 29 U.S.C. § 216(b);

4.    Designate Plaintiff as a representative for the Class;

5.      Designate Plaintiff's counsel as counsel for the Class;

6.      Issue proper notice to the Class at Defendants' expense;

7.      Declare and find that Defendants committed one or more of the following acts:

    i.      Violated provisions of the FLSA by failing to pay regular wages, overtime wages, and other benefits to Plaintiff and similarly situated persons;

    ii.     Willfully violated provisions of the FLSA; and

    iii.    Violated the MWA by failing to pay minimum regular wages and overtime wages to Plaintiff and the Class Members.

8.      Unpaid minimum wages, unpaid wages at Plaintiff and the Class Members' regular hourly rate, and other compensation denied or lost to Plaintiff and the Class Members to date by reason of Defendants' unlawful acts;

9.      Liquidated damages on all compensation due and accruing from the date such amounts were due in equal amounts pursuant to Plaintiff's and the Class Members' unpaid minimum and overtime wages pursuant to the FLSA;

10.     Pre-judgment and post-judgment interest where accorded by law;

11.     Reasonable attorney's fees and costs of suit incurred prosecuting these claims;

12.     Injunctive and other equitable relief as provided by law;

13.     Grant leave to amend to add claims under state and federal laws;

14.     Grant leave to add additional Plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and

15.     Such other and further relief as this Court deems just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: August 1, 2022                    By: */s/ Kyle H. Steenland*
                                                 Kyle H. Steenland (Pa. I.D. No. 327786)

                                                 The Workers' Rights Law Group, LLP
                                                 Foster Plaza 10
                                                 680 Andersen Drive, Suite 230
                                                 Pittsburgh, PA 15220
                                                 Telephone: 412.910.9592
                                                 Fax: 412.910.7510
                                                 kyle@workersrightslawgroup.com

                                                 *Counsel for Plaintiff*